Good morning, Your Honor. May it please the Court, I'm Jonathan Feil for the Plaintiff and Appellant Galani Consulting, Inc. With me in the courtroom and on the brief is my partner, George Purdy. May it please the Court. The judgment of the District Court should be reversed in this case because it contravenes fundamental copyright law principle. That a copyright license prohibits any use not authorized and must be construed in accordance with the principles of copyright law. Daewoo, the defendant, a large sophisticated international corporation, carried out multiple transfers of the software over several years to larger and more powerful computers in violation of the clear restrictions in its license. These actions have diminished the value of the copyright and deprived the software copyright owner of the licensing revenues that are reserved to the copyright owner in the software license. How do you view the 2000 transfer where your predecessor says, you know, we don't service that anymore anyway? It doesn't even charge a fee which they were entitled to do under the agreement. Let's look at what happened because in 2000 there was no communication between the companies. There was a meeting in October of 1999. And let's look at the context in which that meeting occurred in the case of kind of who abandoned whom. The parties had a relationship that continued through 1996. After 1996 it is admitted that Daewoo became self-sufficient with the software. They hired their own programmers. They did not use 4Gen, the then owner of the software, for any further services. They in fact ceased to get updates and upgrades off the server for continuing to stay with the current version of the software. And several months before this 1999 meeting they let their subscription to software support and maintenance lapse. At that point they have a license and they have a license to use it on the designated computer. Let's look at that designated computer provision because Judge Kuhnauer founded a central provision of the license. And neither side in this case appeals from his finding and his conclusions as to what that means. He states quite clearly that transfers to an upgraded computer are not permitted. So in 1999 when they hold the meeting. Answer my question if you would. I am, Your Honor. Well, yeah, but answer it more quickly than that. How do you deal with the 2000 transfer where your predecessor said, you know, we don't service that anyway. Go ahead and transfer. They never said go ahead and transfer. Please look at those facts. There is a statement in the brief of the appellee that they said that, but there is no fact to support that. What they said was this. What about the fee? What they said was this. We do not support that. And they pointed to Section 11L of the contract, or they could have pointed to Section 11L of the contract, which specifically states that when the software owner brought out new versions of the software, they would cease to support the old. A software company cannot remain in business being able to support every version going back to day one. And they offered the upgrade. They stated in conjunction with the contract, we have the upgrade. What they said was, we don't want to, and that's where things ended. It was five months later when they moved the software. Now, if I come into a store and I say, I don't want to buy this from you, it's too expensive, and then I come in in the middle of the night and I take it, is there an obligation on the part of the store owner to do an inventory at that point to make sure that I have it? There was no further communication. In October 1999, 4Gen tells Daewoo, we're not going to support version 4 anymore, if I understand it, and there's no migration path, right, if I understand that right. Didn't then 4Gen have the duty under the obsolescence policy to offer Daewoo a transfer for a modest transfer fee? No, Your Honor, and it doesn't for two reasons. First of all, the license clearly states that if they cease to support or produce upgrades, they produced an upgrade. They produced version 5. Well, is that an upgrade or is that a new version? No, that was an upgrade. It says who? I mean... It says both parties, because if you come in and you look at the testimony, that's an upgrade, just as if we want to use the context of other software that we're familiar with, you have an upgrade from Microsoft Windows XP to Vista. I'm not sure I'd call that an upgrade. We were talking about that in my office when we were preparing for the case. When you download upgrades from Microsoft that happens every couple of weeks, that doesn't mean you've been upgraded from XP to Vista. That is correct, but if you look at what... They say we're not going to have version 4 anymore. No, that's not the case, Your Honor. They didn't say we're not... Well, first of all, if you did look at the context of the contract, it refers to updates and upgrades, and it also refers to the fact, and this is also in the record, that had they been on support, they would have been entitled to that version 5 as an upgrade. The upgrade is that it would continue to have the same functionality. Without paying for it, they would have been entitled to it? No. Well, under support they would have been entitled to it, because if you look at the support provisions of the license, anyone who's on support and maintenance, essentially what they're buying on this subscription, is a continued right to the software in a continued upgrade path. And you could also look then at the testimony of my client Kalani, who, although not the owner of the software at that time, had been a consultant engaged in the software, and that was the upgrade path that many companies followed. The obsolescence policy has never kicked in? The obsolescence policy has never kicked in, Your Honor. Under no circumstances would your client be entitled to the MATA's transfer fee? No, our client would be entitled to damages for copyright infringement. Of course, if you were to hold that the obsolescence provision applies, and I would ask that the court read it in the full context in which it takes place there, which also requires someone or deals with a customer who's on support, who cannot get support and maintenance for their upgrades, for their software operating on a particular machine, and does not have the situation where someone comes in and says, you can take the new system. I'd also ask the court to look at our brief in the one aspect of the finding of fact that we claim is not supported in the record, that it would require the abandonment of their investment in the program. It's very clear from the testimony of DeLu's Stephen Crouch that the only requirement would have been that they would have had to take their accounting data and do some manual conversion, which would have taken a longer time than if they had used a shortcut to get there. So for several months, it appears, they would have had access to their database. That's what it amounts to. They would have had access under the old system. What they would have done was any kind of conversion that's done when you put it on new hardware. They would have run the conversion, installed the new software on the hardware. That would have taken them several months. So that would have been the situation, even if they had been in the ‑‑ if we consider this an upgrade, then you would have to read the contract essentially as providing that for several months they could be nonfunctional. No, you wouldn't, because they would continue to use their old computer during that time. They would then upgrade. What they would do is they would upgrade to the new computer, put the data on that, switch over like anyone does when they do an upgrade. The difference between then the upgrade and an update is that an update, as Mr. Crouch testified, is when you're just doing it sequentially. The typical thing with a new computer system and an update would be you wouldn't shut the old one off before you started the new one. I'd also ‑‑ Let me ask you another question about how all the pieces fit together here. Suppose we ‑‑ what turns ultimately with regard to the later transfers on this 2000 issue? In other words, one way to look at it would be that even if you're wrong about this and, in fact, they at least were entitled to the modest transfer fee at this juncture, how does that influence what happened down the line? I mean, you say somewhat explicitly in your briefs that you can't have a prospective waiver of something that hasn't happened yet. So suppose there was a waiver at this juncture, then why? If there had been a waiver at that juncture, then you would have had to have had some communication from Daewoo to the company about moving it a second time in order to have another waiver. Because for a waiver to exist, there must be an intentional relinquishment of a known right under known circumstances. You cannot just sit there in 2001 until Galani contacted them in 2004, continuing to move the software without talking to anybody. You would, in that situation, you know, have to contact the software owner and say, I'm going to move it, just as they claim they did in 1999. So if you found in 1999 that there had been a ‑‑ that the obsolescence provision had taken effect and that they had waived their transfer fee, that doesn't apply to later moves. I guess that's the question. Or whether you can read it as saying, well, from thenceforward, they could just transfer around freely. Not according to both the federal law of waiver and the Washington, D.C. cases. How does a waiver point so much as that determination at that point that the obsolescence provision had kicked in was essentially permanent? That is, once you could move it, you could just move it. Not because there were later waivers, but because it had been ‑‑ because the waiver was of the right to invoke this provision at all or it was just gone from the contract at that point. I don't believe you can read it that way under the law, Your Honor, either under the Washington cases cited or the A&M Records case and the way to read copyright licenses, because A&M Records specifically deals with copyright, what you're then doing is you're reading this against copyright owners and you're stating that the copyright law protections that exist for a copyright owner don't apply. And that would flap the will of Congress. I want to bring the analogy to other copyrighted works. If we talk about music or literature, there are many works that go out of fashion and then come back in. There may be decades between a license agreement for a musical work and a later desire to bring that musical work out in another respect. The reason that I understand that this contract does provide for this individual computer license, there's obviously some question about why you would have a provision like that which creates discomfort. It seems odd. I think fundamentally that's the problem in this case. Judge Kuhnhauer was very uncomfortable with that. There is testimony as to what the business purposes of that are for. There's also the wall data case that the circuit decided which enforced the similar provision. No, but wasn't that a multiple use? I mean, multiple use makes perfect sense. You can understand that. But it is hard to understand why you care if it's on this computer or that computer if it's only being used once and not multiplied. You can understand that, Your Honor, in the case of a large multi-user system. This is an industrial strain system used by multiple users on a major server. When you change computers, as you do here, you are putting it on state-of-the-art e-commerce servers. As you can see in the record, they moved it to. So what you have in that instance is the copyright owner reserving to itself expressly in the license the right to consent to moves of the software. In order to continue a relationship and a continuing revenue to the copyright because that is what copyright provides. I would like to remain to reserve the rest of my time, but I would like to say that the district court's conclusion that there are no grounds for a claim of copyright infringement cannot be sustained under copyright law principles. The elements of copyright liability here are clear on the facts found by the district court that Daewoo is liable for copyright infringement. We request that the court reverse and vacate the judgment and remand the case to the district court for entry in favor of Ghilani following a hearing on damages. I'll remain. Mr. Feil, thank you. Thanks very much. Good morning, Your Honors. I am Bob Zoller, and I'm here on behalf of the Atelier Daewoo. The interesting thing about Ghilani's appeal in this case is that Ghilani, once again, as it tried to do with the trial court, acts as if it is completely unconstrained by the facts that guide this case. And what I mean by that statement is Ghilani, as is clear in the record here, is a Johnny-come-lately to the entire relationship that took place between Daewoo and the original manufacturer of the software 4Gen. As the record is clear, 4Gen then changes its names to Arista. Eventually it goes to HK Systems. From HK Systems it eventually goes to another entity. And then eventually, and it's not until 2002, that Ghilani, through an assignment, acquires its rights in this particular software. Now, all the predecessors were just 4Gen under different names. Is that correct? Yes, that's correct, Judge, correct. And what's critical about this case, and Mr. Feil keeps referring to violations of copyright, let's be clear about this, this is a copyrighted software, but the issue that was tried in the district court was an issue of a breach of a contract claim. That's what this case is about. Any way you slice and dice it, that has an implication with respect to copyright because it's a licensing agreement of copyrighted software. Now, what is so critical to the analysis of this case, of course, though, is what was the trial in the district court and what was presented before Judge Kunawer. And, of course, the problem that Ghilani can never yet overcome in his case is that he didn't produce any witnesses at trial that knew anything about the relationship between the parties during the relevant period of time. All right, so what's the pertinence of all that? 1997's not a problem. 1999, there seems to be a finding, either expressed or implicit by the district court, that there was, in fact, knowledge that he was going to move this in an acquiescence and a waiver. Let's assume there was a waiver at that point. Yes. First, does it matter whether the obsolescence provision kicks in or not? Why does that matter? It does matter. Why does it matter? It matters because under the obsolescence provision, once the software becomes obsolete, then the only thing that the software owner is entitled to would be a modest transfer fee. All right, but that means, but that doesn't settle the question of whether there was, they may be entitled to less, but they might be entitled to something for the 2001 and 2004 transfers. So it doesn't settle the question of whether they're entitled to something. That is correct. I was concluding that the reason it's significant, of course, here is because it's the underlying facts and what transpired between the parties that gives the weight to the court's findings of fact, which are only, in this context, of course, can only be reversed on a clearly erroneous basis, and from which the judge then finds the application of waiver and then eventually the application of the principle of estoppel as to why. That's the part I find the hardest. I don't understand why. Let's assume for now that the 1999 interactions resulted in the triggering of the obsolescence clause and the waiver of the transfer fee. Why at that point don't you still owe either a transfer or a breach contract for 2001 and 2004? The reason is because in the context of the facts of this case, as the district court found, the conversation that took place between Mr. Crouch, who at the time was a Daewoo employee, who at the time of trial was no longer associated with Daewoo, and Mr. Randolph, who was the representative on behalf of HK Systems, was that we, in essence, are abandoning, in a non-legal sense, this software. We no longer are producing product updates for this software. We don't have a migration path. And the clear and undisputed testimony in the record here was that, based upon that meeting and that discussion, that Mr. Crouch was, and what Judge Kunauer found to be the validly objective conclusion, that there was no longer anyone who was going to support the software. It was only based upon that meeting and that determination that Daewoo then went out on its own and found these case tools and then had the subsequent moves. Isn't one of the answers to Judge Berzon that, if the obsolescence policy had kicked in, 4Gen would have had the duty to offer a license and, you know, set the transfer fee, but they never did that. They never, in fact, even today, Mr. Feil says it doesn't even apply. Well, what I did mean to say, Judge Silberman, with regard to that, is, again, the findings of Judge Kunauer, that's exactly right, that they waived that. They never did it. They didn't do it in 97. HK Systems doesn't do it in 99. They want to take advantage of the obsolescence policy. They've got to say, we'll give you a license and here's the charge, here's the modest fee. They never did that. They never did that, and I also want to make the point here on the appeal. Now we get to the appeal stage, and their argument about obsolescence and why this provision doesn't apply changes. They've never made the argument that the obsolescence clause applies to the computer in the district court. They've come up with a newly minted claim on the appellate level as to what the meaning of obsolescence is, and we do raise it in our brief that we don't even think that issue is now properly before the court because they've done a complete reversal as to what the meaning of obsolescence is. Okay. I think I understand why the obsolescence clause is waived for the reasons I just indicated. I'm not so clear why the other provisions of the contract were waived. It was from one computer to the other. To keep moving the... Well, it wasn't. What Judge Kuhnhauer then found is that there had been a waiver. Of what? The obsolescence clause triggered the waiver. They never then asked for the fee at the time. They had two opportunities, 97, they don't seek a fee, 99, into 2000, they don't seek a fee. 97 happens. It still doesn't authorize them to move the software to another... Well, and then based upon that, he then applies the principle of estoppel based on the meeting that took place between Mr. Crouch and Mr. Randolph in concluding... All right, that's the point that I'm having trouble with, and I continue to have trouble with it. Where does estoppel come from? Estoppel of whom, about what? The estoppel comes because at this point, as far as Daewoo is concerned, there's nobody in the marketplace servicing. There's nobody. Nobody has surfaced. Nobody has come. Not even Golani, who acquired the interest in the software in 2002. They don't even come to Daewoo in 2004. Testimony in the record is that Daewoo doesn't know that there's anybody out there supporting the software or who even has any concern. So what Judge Kuhnhauer found, based upon, again, it's really Mr. Crouch's testimony that is the key to this entire case, and I encourage the panel to review that testimony. It was unrefuted. They don't challenge any of those findings, by the way, on appeal. It's based upon that that then Judge Kuhnhauer finds that they are a stop for making the argument now that there should have been a modest transfer fee paid when they are the Johnny-come-latelys after the facts who want to try to interpret what should have happened during the relevant period of time. But nobody, in 2001, they didn't tell anybody they were transferring the software. And in 2004, they did tell them, and they were on the scene, and they said no. So that's where I'm having a hard time with seeing. I don't even know what the concept of a stop-all means in this context, but it sounds like you're saying something more like there was an anticipatory breach and so the contract just evaporated in 2000 or what? No, I think what we're saying is, and let me deal with 2004, because as you said, by that time, Golani has now at least come onto the surface. They have one meeting with Daewoo in Atlanta, Georgia, and at that point in time, as Judge Kuhnhauer found, again, based on the record in this case, testimony of the Daewoo management people who testified, Daewoo had already been in the process at that point in time of arranging for the transfer of the software to upgraded hardware, and that's all this is. It's just changing it to a better processor with more memory. It's still the license, and Judge Kuhnhauer, it's important to recognize here, Judge Kuhnhauer always recognizes and enforces that there is a copyright issue that still exists here. He didn't invalidate the copyright in any respect. And what he did, Judge Berzon, with regard to the application of the UCC, he found, applying 2095 of the Washington UCC, that they should be stopped from making the argument that they have reversed the waiver, because at that point in time, Daewoo had already reasonably relied upon it and incurred expenses with regard to the anticipatory move. I know, I understand that I'm being a little persnickety about this, but Judge Kuhnhauer said, which I understand to be a correct statement of the law, that you don't have prospective waivers under this circumstance anyway. So they weren't reversing a waiver. In other words, any waiver that occurred with regard to the move in 2000, it wasn't that they were reversing a waiver in 2001, it just hadn't occurred yet. And Judge Kuhnhauer states it that way, and then he later states it the other way. Well, if I can, I don't believe he stated it the other way. I think what he did, because it was a fairly reasoned and detailed analysis, what he finds is that it's not the waiver with regard to the later transfers. It's the principle of estoppel that applies to them coming in after the fact and now making arguments as to what don't support the actual facts of the law. So we're relying on the UCC or relying on a provision about reversing a waiver, and this isn't reversing a waiver, right? That is correct. He cites the UCC provision, but he does appropriately, and again, they don't contest the factual findings that support this. He says that with regard to the estoppel argument, unless the retraction would be unjust in view of the changes of the position in reliance on the waiver. And that's the reference that he made. So the thing about it and why I believe in this context that it should not be disturbed on appeal is it's a very factually explicit finding by the district court, and again, it's all predicated upon what took place at a point in time when Galani wasn't even on the scene. What exactly was waived, Judge Kuhnhauer? What he finds, the conduct of the parties, particularly with regard to HK systems, affected a waiver of any modest transfer fee when the software was moved to an upgraded computer. He then applies that concept and then finds that there's an estoppel argument that applies to 2004 because it is true by that point in time, Judge Silverman, that Galani has now come on the scene, albeit it's two years after they've even acquired the interest and they've had a meeting, and he said it would be unfair to Daigle at that particular point in time to have Galani enforce its claim when Daigle had already incurred expenses and resources to commence the move to the upgraded computer. I think I understand. So by waiving the obsolescence provision that they may have had the right to invoke. That is correct. They are then estopped from doing anything further. That's Judge Kuhnhauer's, the logic of Judge Kuhnhauer. Now, the important point of all this is, and Judge Brisson, he has found, he is enforcing. We didn't win everything here. He's enforcing the contract right now. He is finding that there's still a binding license agreement and that we can't just do whatever we want to do. We have to still abide by the terms of that, but with respect to the history that transpired and the fact that they weren't participators in any of that and what the testimony was, he made very specific findings of fact. What does that mean in dollars and cents that you still have to live by the contract? Well, for example, we could not now, I would submit to the court, just transfer it to another upgraded computer without getting either their approval or paying a modest transfer fee at this point in time because they have revoked the waiver. And he enforced the contract. You're still using it, but you say you couldn't sell it, you couldn't transfer it. We're still on the same computer we were in 2004. I continue to have trouble understanding how you can revoke a waiver that didn't exist. The waiver did not apply forward. Unless your concept is that it did apply. I mean, what I was thinking about is that because of the nature of the obsolescence provision, it may be that once it kicks in, it's just there is no later rule about transferring further. As a matter of the contract, it's not a waiver problem, but that maybe you read the obsolescence provision as saying once it applies and you can transfer, that you don't have to keep going back to them because they still can't do anything for you. But if you don't read it that way, I don't see how you can talk about a revocation of a waiver and at the same time agree that there is no prospective waiver. If I've confused you, I apologize. That's exactly our argument, and that's what we put in the brief. Our point is that once it was triggered, we use the word in our brief, triggered by what occurred in 1999, the waiver is now in place. That's exactly right, and that's what Judge Kuhnauer found. But then, of course, it wouldn't be in effect anymore now either. It would just be gone. Well, he revoked it. At this point in time, that's correct. That's why we couldn't move it again. You're saying that's not what Judge Kuhnauer hold, because he's holding you now. You can't move it next time. No, because they revoked it. They revoked it. They wrote to us in 2004, and they said you can't do it again. In 2004, Judge Kuhnauer found, well, under the UCC, Section 22095, that that is a proper revocation, if you will, that the revocation didn't apply to the 2004 transfer because at that point in time, they had to be stopped because Daewoo had already relied upon the fact that the waiver had been triggered. In other words, he found that it was not reasonable notice, is what he says in the opinion, with regard to stopping the transfer because Daewoo had already committed its resources and money to moving it. So that's how he analyzed the issue. And you're correct, Judge Burson. The issue with regard to the waiver is once it was triggered in 1999, it took an act on the part of, in this case, Galani, who comes in after the fact, to revoke the waiver. That happens in 2004, but it didn't affect, according to Judge Kuhnauer's analysis here, a modest transfer fee for 2004 because at that point in time, it was not reasonable notification given the fact that Daewoo was already in the process of moving it to the new computer. Thank you very much, Mr. Zoner. Thank you. Mr. Clown? You've got about a minute and 40 seconds left. I'd like to make four quick arguments. First of all, I believe Judge Burson is exactly right, that the law cannot allow this to be an indefinite waiver of events that took place thereafter. We don't believe that the law supports that this is a waiver of the modest transfer fee. If you even look at the contract, you should ask, who's waiving what? This is a duty on the part of 4Gen to offer to people the right to move. Daewoo does not approach them in 2000 when they move it, saying, we'd like to move. How much does it cost? The only waiver that the judge found was to collect a modest transfer fee. If the announcement in 1999 that they wish to move it is tantamount to we have moved it, that covers one. There's no way for them to send a bill when they're not told when they're going to move it again. You can't have successive waivers of this. Let's also look at the justification for not allowing them to revoke, that they change position and that they can afford hundreds of thousands of dollars on hardware but can't afford a modest transfer fee. What's unjust about requiring them to then pay something when Galani approaches them in 2004 and says you're not allowed to move it? By the way, do we know what a modest transfer fee is? No, because there was no discussion. In fact, there was no request on the part of Daewoo at that time because they did not have a copy of a license agreement. There's a 2004 letter in the record in which Galani provides it. In summary, Your Honor. Did you sue asking for a modest transfer fee as opposed to copyright violations? We sued both under the contract and under copyright. For a transfer fee? For damages for moving it. We did not take the position at the time that the obsolescence provision had been invoked. There was never a discussion of it between the parties in 1999 or in 2004 when they came and said we're going to move it again. Daewoo does not then say, Galani, what's the cost to move it. Thank you, Your Honor. Mr. Zong, thank you as well. The case is disbarred. You dismissed and will stand on assessment for the day.
judges: Silverman, Berzon, Mahan